WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Heulon Brown,<br><br>                  Petitioner,<br><br>v.<br><br>Charles L. Ryan, et al.,<br><br>                  Respondents. | No. CV-15-0446-TUC-LCK<br><br>**ORDER** |

Petitioner Heulon Brown has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Before the Court are the Petition (Doc. 1), Respondents' Answer (Doc. 10), and Petitioner's Reply and three supplements (Docs. 18-21, 26). The parties have consented to Magistrate Judge jurisdiction. (Doc. 14.)

## **FACTUAL AND PROCEDURAL BACKGROUND**

Brown was convicted in the Pima County Superior Court on one count of first-degree murder; one count of first-degree burglary; two counts of aggravated assault of a minor under fifteen; three counts of aggravated assault, deadly weapon/dangerous instrument, firearm; and four counts of attempted armed robbery. (Doc. 10, Ex. B.) Brown was sentenced to concurrent prison terms, the longest of which is twenty-five years to life. (*Id.*)

The Arizona Court of Appeals summarized the facts in support of Brown's convictions:

> One evening in August 2010, four armed, masked men, including Brown, went to the door of an apartment and a fifth man, E.V., who was not

> masked, was forced to enter the apartment at gunpoint ahead of them. Immediately after opening the door, E.V., who was known to the apartment's occupants, dropped to the floor, placed his hands on his head, and curled into a ball while the gunmen ordered the occupants to "get on the ground." One of those occupants, J.J., had a gun and shot at the masked men, killing Michael White and injuring Brown. During the exchange, J.J. and A.B., a minor who was in the apartment, also were shot and injured.

(*Id.*, Ex. C at 2.)

Brown appealed and the Arizona Court of Appeals affirmed his convictions and sentences. (*Id.*, Exs. C, E, H.) Brown's Petition for Review to the Arizona Supreme Court was denied. (*Id.*, Exs. K, M.) Brown filed a Notice of Post-conviction Relief (PCR). (*Id.*, Ex. N.) He subsequently withdrew the notice because an investigator was unable to locate witness Eduardo Vega, who was the intended source of newly discovered evidence that Brown intended to present in a PCR proceeding. (*Id.*, Ex. O.)

## **DISCUSSION**

Brown raises six claims. (Doc. 1.) Respondents contend Claim 4 is procedurally defaulted, and the Court will first examine whether that claim is properly exhausted. Respondents concede the remainder of the claims were properly exhausted and the Court will review them on the merits.

### **EXHAUSTION**

### **Principles of Exhaustion and Procedural Default**

A writ of habeas corpus may not be granted unless it appears that a petitioner has exhausted all available state court remedies. 28 U.S.C. § 2254(b)(1); *see also Coleman v. Thompson*, 501 U.S. 722, 731 (1991). To properly exhaust, a petitioner must "fairly present" the operative facts and the federal legal theory of his claims to the state's highest court in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999); *Anderson v. Harless*, 459 U.S. 4, 6 (1982); *Picard v. Connor*, 404 U.S. 270, 277-78 (1971).

In Arizona, there are two primary procedurally appropriate avenues for petitioners to exhaust federal constitutional claims: direct appeal and PCR proceedings. A habeas

petitioner's claims may be precluded from federal review in two ways. First, a claim may be procedurally defaulted in federal court if it was actually raised in state court but found by that court to be defaulted on state procedural grounds. *Coleman*, 501 U.S. at 729-30. Second, a claim may be procedurally defaulted if the petitioner failed to present it in state court and "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1; *see also Ortiz v. Stewart*, 149 F.3d 923, 931 (9th Cir. 1998) (stating that the district court must consider whether the claim could be pursued by any presently available state remedy). If no remedies are currently available pursuant to Rule 32, the claim is "technically" exhausted but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1; *see also Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).

Because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *Reed v. Ross*, 468 U.S. 1, 9 (1984). However, the Court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates legitimate cause for the failure to properly exhaust the claim in state court and prejudice from the alleged constitutional violation, or shows that a fundamental miscarriage of justice would result if the claim were not heard on the merits in federal court. *Coleman*, 501 U.S. at 750.

**Claim 4**

Brown alleges that Arizona's felony murder statute is unconstitutional because, in his case, its application was premised upon the justifiable shooting of an intruder by a victim.[1]

---

[1] In the Reply brief, Brown argues that using accomplice liability for a first-degree felony murder conviction is unconstitutional because he was not convicted upon proof of every element of the offense. (Doc. 18 at 14.) The claim is not properly before this Court because it was not included within the Petition. *See* Rule 1(c)(1), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254 (requiring petition to specify all grounds for relief). Further, this claim is procedurally defaulted because the Arizona Court of Appeals found it waived for failure to raise it in the opening brief. (Doc. 10, Ex. C at 19.)

In his opening appellate brief, Brown argued that Arizona's felony murder statute violated Due Process and the Eighth Amendment prohibition on excessive sentences. (Doc. 10, Ex. E at 25.) Citing to other states, Brown argued that felony murder should require a mens rea more than that of the underlying felony and that the death must occur in furtherance of the felony. (*Id.* at 26-27.) He also relied upon the principle that more severe punishment is warranted for those that intentionally cause harm. (*Id.* at 28 (citing *Enmund v. Florida*, 458 U.S. 782, 798 (1980).)

It is debatable whether Brown fairly presented Claim 4 to the Arizona Court of Appeals. It was not articulated to that court in the same way it is presented in his habeas petition. However, in his appellate brief he cites to other states that have restricted felony murder to killings by the felon or co-felons, rejecting it for a justifiable killing of one of the felons. (Doc. 10, Ex. E at 26-28.) Further, the Court of Appeals addressed this factual argument in its ruling. (*Id.*, Ex. C at 18.) Regardless of exhaustion, below, the Court will address the claim on the merits.

**MERITS**

**Legal Standards for Relief under the AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) created a "highly deferential standard for evaluating state-court rulings' . . . demand[ing] that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)). Under the AEDPA, a petitioner is not entitled to habeas relief on any claim "adjudicated on the merits" by the state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The last relevant state court decision is the last reasoned state decision regarding a claim. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)); *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005).

"The threshold test under AEDPA is whether [the petitioner] seeks to apply a rule of law that was clearly established at the time his state-court conviction became final." *Williams v. Taylor*, 529 U.S. 362, 390 (2000). Therefore, to assess a claim under subsection (d)(1), the Court must first identify the "clearly established Federal law," if any, that governs the sufficiency of the claims on habeas review. "Clearly established" federal law consists of the holdings of the Supreme Court at the time the petitioner's state court conviction became final. *Williams*, 529 U.S. at 365; *see Carey v. Musladin*, 549 U.S. 70, 74 (2006).

The Supreme Court has provided guidance in applying each prong of § 2254(d)(1). The Court has explained that a state court decision is "contrary to" the Supreme Court's clearly established precedents if the decision applies a rule that contradicts the governing law set forth in those precedents, thereby reaching a conclusion opposite to that reached by the Supreme Court on a matter of law, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. *Williams*, 529 U.S. at 405-06; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Under the "unreasonable application" prong of § 2254(d)(1), a federal habeas court may grant relief where a state court "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend the principle to a new context where it should apply." *Williams*, 529 U.S. at 407. For a federal court to find a state court's application of Supreme Court precedent "unreasonable," the petitioner must show that the state court's decision was not merely

incorrect or erroneous, but "objectively unreasonable." *Id.* at 409; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Visciotti*, 537 U.S. at 25. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as '"fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Under the standard set forth in § 2254(d)(2), habeas relief is available only if the state court decision was based on an unreasonable determination of the facts. *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (Miller-El II). In considering a challenge under § 2254(d)(2), state court factual determinations are presumed to be correct, and a petitioner bears the "burden of rebutting this presumption by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Landrigan*, 550 U.S. at 473-74; *Miller-El II*, 545 U.S. at 240.

**Claim 1**

Brown alleges the admission of three involuntary statements violated his right to remain silent and his right to a fair trial. In particular, he was questioned in the hospital after surgery, necessitated by Brown being shot during the home invasion underlying his convictions. Brown alleges he was in pain, on medication, and doing his best stay conscious.

The Arizona Court of Appeals denied this claim:

> Following the home invasion, Brown, who had been shot in the chest, was taken to Tucson's University Medical Center where he underwent emergency surgery. The same day, approximately six hours after the surgery, police detectives questioned him about the incident (the August 26 interview). At the beginning of the interview, Detective Diaz informed Brown that he was being detained and advised him of his rights pursuant to *Miranda,* after which Brown said, "I'll answer your questions." Although Brown had been given medication, Detective Cassel noted that the conversation was "normal" and "coherent," and "nothing ... was limiting [Brown's] ability to communicate." Diaz similarly noted that Brown was lucid and able to engage in active conversation. At the conclusion of the interview, Brown was informed he was under arrest.
>
> ¶ 6 At approximately two o'clock the following morning, Diaz returned to the hospital and continued questioning Brown (the August 27 interview). The detective asked, "Obviously, you remember your rights from yesterday

and you still understand them, we're still good with that? Yeah?" Brown responded, "Ah-[h]ah," and proceeded to answer questions. At no point during either interview did Brown invoke his right to remain silent or his right to counsel. Finally, seven days later, while still hospitalized, Brown initiated a conversation with Diaz (the September 3 interview). The detective did not remind him of his rights, and Brown made additional statements. Before trial, Brown moved to suppress all of his statements on the ground he had not given them voluntarily. The trial court denied the motion after conducting an evidentiary hearing, and statements from the three interviews were introduced at trial.

. . . .

[A]lthough detectives observed that Brown was "hooked up to many monitors and ... an IV," and that he appeared to be in pain, they testified he was "lucid" and able to engage in active conversation, his answers to their questions were coherent and responsive, and "nothing ... was limiting his ability to communicate." Brown at one point requested pain medication, and the nurse informed him she would provide the medication as soon as the interview was over. Brown did not ask for the questioning to stop, nor did he repeat his request for pain medication.

¶ 10 The detectives made no promises or threats to Brown. And, after informing him of the nature of the questions they wanted to ask, about a minute into the encounter the detectives read him his rights, which he said he understood. Brown agreed to continue answering questions, and did so for about an hour. Nothing in the recording of the interview or the suppression testimony indicated Brown's will had been overborne. The trial court reviewed and considered the audio recording of the interview when determining voluntariness, as have we, and it supports the court's ruling. Under these circumstances, we find no abuse of discretion in the court's finding that Brown's statements were voluntary. And because his arguments relating to the voluntariness of the statements given in the subsequent interviews hinge on a finding of involuntariness in the first, we need not address them.

(Doc. 10, Ex. C at 3-6.)

A defendant is deprived of due process if his conviction is founded upon an involuntary confession. *See Dickerson v. United States*, 530 U.S. 428, 432 (2000). To ensure due process, the test for determining the voluntariness of a suspect's confession is whether, considering all the circumstances, the government obtained the statement by physical or psychological coercion or by inducement so that the suspect's will was overcome. *See United States v. Coutchavlis*, 260 F.3d 1149, 1158 (9th Cir. 2001) (citing *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963)).

Utilizing the totality of the circumstances test, both the characteristics of the accused and the details of the interrogation are considered. *See Dickerson*, 530 U.S. at 434; *see also Haynes*, 373 U.S. at 513-14. The circumstances to be considered include: (1) whether there was police coercion; (2) the length of the interrogation, its location and its continuity; (3) whether police advised the suspect of his rights; and (4) whether there were any direct or implied promises of a benefit. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003), *overruled on other grounds by Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "A statement is involuntary if it is extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence." *Id.* (quoting *Hutto v. Ross*, 429 U.S. 28, 30 (1976)). Courts also consider the defendant's age, education, the nature of any questioning, and the use of any physical punishment such as the deprivation of food or sleep to determine voluntariness. *See United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). "In short the true test of admissibility is that the confession is made freely, voluntarily, and without compulsion or inducement of any sort." *Haynes*, 373 U.S. at 513-14. The question of whether a suspect's inculpatory statements were voluntary is typically a mixed question of law and fact. *See Miller v. Fenton*, 474 U.S. 104, 111-12 (1985). This Court must defer to the underlying factual determinations. *Lambert v. Blodgett*, 393 F.3d 943, 977-78 (9th Cir. 2004).

With respect to the first interview, Brown alleges it was involuntary because he was in pain and pain medication was withheld during the interrogation. The trial and appellate court found that Brown was read and waived his *Miranda* rights, and was questioned for approximately one hour. (Doc. 10, Ex. C at 6; Ex. Q at 2.) The trial court found that Brown was able to speak coherently, never expressed confusion, did not request pain medication again after it was denied, and never asked for the questioning to be stopped. (*Id.*, Ex. Q at 2.) Brown has not alleged he was threatened or promised anything, and the appellate court found he was not. (*Id.*, Ex. C at 6.) Despite Brown's

hospitalization and recent emergency surgery, the totality of circumstances reveal Brown's statement was not coerced nor was his will overborne.

As to the second statement, Brown alleges it was involuntary because he did not acknowledge that he had received *Miranda* rights. To the contrary, the appellate court found that when the detective mentioned that Brown had been read his rights the previous day, Brown verbally acknowledged that statement. Additionally, a suspect need not be re-advised of his rights when a second statement is close in time (up to two days) to the advisement of rights before a first statement and no evidence suggests the effectiveness of the earlier warning has diminished. *See United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1128-29 (9th Cir. 2005) (considering initial warning sufficient when no intervening event indicates a change in rights, such as different interrogator or interview location, and suspect in custody the whole time). Brown did not invoke his right to remain silent or to counsel during the second interview. The singular challenge Brown raises as to this statement, based on *Miranda*, has no factual basis. To the extent Brown's challenge to his second statement relies upon his challenge to his first statement, it fails based on the Court's finding of voluntariness as to that statement.

With respect to the third statement, Brown alleges he was not read his *Miranda* rights and he believed he was detained and not under arrest. Relying on quotes from the first interrogation, the trial court found that Brown clearly understood after his first statement that he was under arrest, was a suspect in a homicide case, and was going to be taken to jail when released from the hospital. (Doc. 10, Ex. Q at 3-4.) Brown has presented no evidence to overcome the presumption of correctness this Court must give to those findings. 28 U.S.C. § 2254(e)(2). Brown had been advised of his rights at the time his first statement was taken and reminded of them when his second statement was obtained. Both times he waived his rights and answered questions. Although a substantial period of time elapsed between the second and third interviews (seven days), Brown initiated the third contact with the detective. *See United States v. Teaupa*, 617 F. App'x

699, 700 (9th Cir. 2015) (considering fact that suspect initiated conversation as a sign that statements were voluntary). Considering the totality of the circumstances, Brown's third statement was voluntary.

Brown also alleges that his right to remain silent was violated because he was compelled to testify based on the admission of his three pretrial statements. Because the Court has found Brown's pretrial statements were voluntary and properly admitted, his decision to testify did not violate his right against self-incrimination.[2] *See Harrison v. United States*, 392 U.S. 219, 222 (1968).

The state court's denial of this claim was not objectively unreasonable.

**Denial of Jury Instructions – Claims 2, 3, and 5**

Jury instruction issues are generally matters of state law for which federal habeas relief is not available. *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991). As a matter of federal law, relief is only available when a defendant shows that instructional error "so infected the entire trial that the resulting conviction violates due process." *Id.* at 72. A criminal defendant "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States,* 485 U.S. 58, 63 (1988). However, a federal court sitting in habeas review is ordinarily "bound to accept a state court's interpretation of state law." *Butler v. Curry,* 528 F.3d 624, 642 (9th Cir. 2008). Additionally, a state trial court's finding that the evidence does not support a claimed defense "is entitled to a presumption of correctness on federal habeas review." *Menendez v. Terhune,* 422 F.3d 1012, 1029 (9th Cir. 2005). As a result, a petitioner bears an "especially heavy" burden to establish a constitutional violation based on "the failure to give an instruction." *Hendricks v. Vasquez*, 974 F.2d 1099, 1106 (9th Cir. 1992) (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

---

[2] The court of appeals found this claim waived (Doc. 10, Ex. C at 6); therefore, in addition to lacking merit it is procedurally defaulted.

- 10 -

Claim 2

Brown alleges his Sixth and Fourteenth Amendment rights were violated by the trial court's denial of a "voluntary act" jury instruction. Brown argued that he was forced to participate in the home invasion; therefore, he did not perform a voluntary act.

The Arizona Court of Appeals denied the claim, finding the trial court did not commit fundamental error in denying this instruction:

> Section 13–201, A.R.S., states that a "voluntary act" is a minimum requirement for criminal liability. Section 13–105(42), A.R.S., defines "voluntary act" as "a bodily movement performed consciously and as a result of effort and determination." Our supreme court has clarified that this definition encompasses actions that are not part of the "autonomic nervous system" or taken while "unconscious, asleep, under hypnosis, or during an epileptic fit." *State v. Lara,* 183 Ariz. 233, 234, 902 P.2d 1337, 1338 (1995). A voluntary-act instruction is appropriate only if reasonable evidence "support[s] a finding of a lack of a voluntary act." *State v. Moody,* 208 Ariz. 424, ¶ 201, 94 P.3d 1119, 1163 (2004); *State v. Almaguer,* 232 Ariz. 190, ¶ 19, 303 P.3d 84 (App. 2013).
>
> ¶ 23 Brown argues that "his inability to resist the threat to his life implicated his 'fight or flight' reflex, rendering his physical actions involuntary" within the meaning of §§ 13–105(42) and 13–201. He points to his testimony that he, K.C. Reaves, Ashton Walker, and White were driving and one of the men told him they were going to a house to pick up someone to play basketball. According to Brown, E.V. was outside the house when they arrived. After they parked and got out of the car, Reaves aimed a gun at E.V., White told Brown to put on a mask, and White and Reaves started walking E.V. toward the door of the house. Brown testified he put on the mask because he "didn't really have a choice," and when he lagged behind, White pointed a gun at him and told him to get in front of E.V. Although Brown testified he felt he did not have a choice, a claim the jury obviously rejected, no evidence adduced at trial suggested that his actions were not the result of conscious effort and determination.

(Doc. 10, Ex. C at 14-15.)

As interpreted by the Arizona courts, a defendant is only entitled to a voluntary act instruction if evidence demonstrates he did not act consciously, that his actions were reflexive. *See Lara*, 902 P.2d at 1338, 183 Ariz. at 234. This Court presumes the state court finding that Brown's actions were voluntary is correct. Petitioner makes no argument that his actions were involuntary under Arizona law. He argues only that he was "forced" to participate in the crime. According to Brown's version of the facts, he was directed to put on a mask and to enter the apartment, which he did. His actions were

- 11 -

conscious not reflexive. Based on this evidence, Brown was not entitled to a voluntary act instruction under Arizona law. Therefore, denial of the instruction did not violate his right to due process and the state court's denial of this claim was not objectively unreasonable.

Claim 3

Brown alleges his Sixth and Fourteenth Amendment rights were violated by the trial court's denial of a "missing witness" jury instruction. Specifically, Brown contends victim Eddie Vega did not appear and that Vega knew that Brown was forced to participate in the offense.

The Arizona Court of Appeals set forth the following information in denying this claim:

> Brown sought the instruction with respect to E.V., who apparently was forced to enter the apartment ahead of the armed home invaders and who did not testify or appear at trial despite the state's attempt to serve him with a subpoena. We review for a clear abuse of discretion a court's decision whether to give a requested instruction. *See State v. Walters,* 155 Ariz. 548, 551, 748 P.2d 777, 780 (App. 1987).
>
> ¶ 25 To be entitled to a missing-witness instruction, a defendant must establish that the witness was in the exclusive control of the state and would have provided exculpatory evidence had he or she testified. *Walters,* 155 Ariz. at 551, 748 P.2d at 780; *see also United States v. Leal–Del Carmen,* 697 F.3d 964, 974–75 (9th Cir. 2012) (to obtain missing-witness instruction, party must show (1) witness is "peculiarly within the power of the other party" and (2) inference that missing witness will testify unfavorably to other party is natural and reasonable under the circumstances). Brown argues E.V. was "peculiarly within the power of the Pima County Attorney" because he was alleged to be a victim in the case, and victims are entitled by the Arizona Constitution "[t]o refuse an interview, deposition, or other discovery request by the defendant, the defendant's attorney, or other person acting on behalf of the defendant." Ariz. Const. art. II, § 2.1(A)(5).
>
> ¶ 26 At trial, the prosecutor informed the court that the state had issued a subpoena for E.V., but was unable to locate and serve him. Although E.V., as a victim, could have declined to be interviewed by Brown before trial, nothing about his status as a victim would have prevented Brown from calling him to testify in support of Brown's defense. *See State v. Riggs,* 189 Ariz. 327, 330, 942 P.2d 1159, 1162 (1997) (Victim's Bill of Rights does not permit victim to refuse to testify at trial). If Brown believed E.V.'s testimony would have been favorable to his defense, he could have listed E.V. as a witness and attempted to serve him with a subpoena. Had he done so, and had the state prevented E.V.'s appearance at trial, then E.V. would

>     be under the state's control; however, such was not the case here. Instead, the state also took steps to secure E.V.'s attendance at trial—that these steps proved unsuccessful suggests the state had no greater control of E.V. than Brown. And, given Brown's ability to call E.V. and the state's own attempts to procure his presence, E.V.'s absence from trial does not permit a rational inference that he would have testified in Brown's favor. Accordingly, a missing-witness instruction was not justified and the trial court did not err by refusing it.
>
>     . . . .
>
>     [7] Nor does Brown establish that E.V.'s testimony would have corroborated his defense that he was forced by others to participate in the home invasion. Brown admitted he had never met E.V. prior to the break-in. Like the other home invaders, Brown was wearing a mask, and, although he testified he was pushed into the apartment at gunpoint, he also testified that E.V. was positioned before him. Brown's contention that E.V. would have been able to support his duress defense is therefore speculative and would not support giving the requested instruction.

(Doc. 10, Ex. C at 15-17 & n. 7 (other footnote omitted).)

As interpreted by the Arizona courts, a defendant is only entitled to a missing witness instruction if the person is within the State's particular power and it is reasonable to infer that the witness would provide testimony favorable to the defendant. *See State v. Walters*, 748 P.2d 777, 780, 155 Ariz. 548, 551 (Ct. App. 1987). This Court presumes the state court findings are correct – that the state did not have control over E.V. and that there is no basis to infer E.V. would have testified in Brown's favor. Brown has presented no evidence to the contrary. Further, Brown's argument that the State had control over E.V. is based solely on his status as a victim. As pointed out by the appellate court, although victims cannot be interviewed prior to trial nothing precludes a defendant from subpoenaing the person as a witness. Additionally, Brown fails to establish that E.V., a stranger, would have offered exculpatory testimony. The trial docket reveals that Brown did not list E.V. as a trial witness, although the state did. That suggests any testimony he had to offer was not favorable to Brown. Therefore, denial of the instruction did not violate Brown's right to due process and the state court's denial of this claim was not objectively unreasonable.

### Claim 5

Brown alleges his constitutional right to due process and to present a defense were violated by the trial court's denial of a duress jury instruction with respect to first-degree murder and Count Four aggravated assault against a minor under fifteen. The Arizona Court of Appeals denied the claim, finding no fundamental error. (Doc. 10, Ex. C at 12-13.)

Under Arizona law, duress is not a defense for homicide or an offense involving serious physical injury. A.R.S. § 13-412(C). Respondents argue this claim is not cognizable because Brown was not entitled to an instruction for a defense not supported by the evidence and the availability of defenses is a matter of state law. Because Brown has raised a claim based on the federal Constitution, the Court will address it on the merits rather than dismissing it as not cognizable.

The starting point for this due process analysis is whether the petitioner was erroneously deprived of a jury instruction to which he was entitled under state law. *See Davis v. Strack,* 270 F.3d 111, 123 (2d Cir. 2001); B*arker v. Yukins,* 199 F.3d 867, 876 (6th Cir. 1999). Because duress is not a recognized defense in Arizona law for homicide or serious physical injury, he had no constitutional right to a duress instruction on such charges. *See Mathews*, 485 U.S. at 53; *Bradley v. Duncan*, 315 F.3d 1091, 1098 (9th Cir. 2002) (applying *Mathews* standard to a due process claim raised in a habeas proceeding). There is no clearly established supreme court law to support Brown's argument that the trial court was obligated to give a jury instruction that is not recognized by Arizona law. States are traditionally free to define the elements of crimes and defenses. *See Clark v. Arizona*, 548 U.S. 735, 749 (2006). Therefore, denial of the instruction did not violate his right to due process and the state court's denial of this claim was not objectively unreasonable.

**Claim 4**

Brown alleges that Arizona's felony murder statute is unconstitutional because, in his case, its application was premised upon the justifiable shooting of an intruder (a co-felon) by a victim. In the Reply brief and supplemental briefs, Brown argues numerous different theories to support his argument that the felony murder statute in Arizona is unconstitutional.

Brown's claim fails because the Supreme Court has never held that it is unconstitutional to convict someone of felony murder based on Brown's circumstances. *See Brewer v. Hall*, 378 F.3d 953, 955 (9th Cir. 2004) ("If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law."). In particular, the Supreme Court has never held that felony murder is cruel and unusual punishment, and felony murder is not in itself a punishment statute. *See Lockett v. Ohio*, 438 U.S. 586, 602 (1978). The fact that other states have chosen to define felony murder differently or more narrowly has no bearing on the constitutionality of Arizona's statute. However, the Court will address some of Brown's specific arguments.

First, to the extent Brown challenges Arizona's felony murder statute generally or the fact that he can be held responsible for the murder as an accomplice, that has no constitutional merit. *See Lockett*, 438 U.S. at 602 ("That States have authority to make aiders and abettors equally responsible, as a matter of law, with principals, or to enact felony-murder statutes is beyond constitutional challenge."). Second, Brown argues that the Arizona statutes do not provide constitutionally sufficient notice that accomplice liability can provide a basis for a charge of first degree murder. The felony murder statute states that a person can be found guilty of first degree murder by acting alone "or with one or more persons" to commit burglary or robbery and in the course of that offense, the person "or another person" causes a death. A.R.S. § 13-1105(A)(2). This language

provides clear notice that an accomplice to burglary or robbery can be held responsible for a death that occurs in the course of those felonies. Petitioner relies on subsection (1) of A.R.S. § 13-1105(A) to argue that all first degree murder convictions in Arizona require intent to cause death. Subsection (1) pertains to premeditated murder and subsection (2) pertains to felony murder; the State need satisfy only one or the other to prove first degree murder, it need not prove the elements of both. The *Phillips* case upon which Petitioner relies precludes accomplice liability only for <u>premeditated</u> murder but recognizes an accomplice may be guilty of felony murder if all the elements are established. *State v. Phillips*, 46 P.3d 1048, 1057, 202 Ariz. 427, 436 (2002), *as supplemented* 27 P.3d 1228, 205 Ariz. 145 (2003).

The state court's denial of this claim was not contrary to or an unreasonable application of Supreme Court law.

**Claim 6**

Brown alleges his Sixth Amendment right to counsel and Fourteenth Amendment due process rights were violated by the police questioning him a second and third time without an attorney or an initial court appearance. Therefore, admission of his statements was unconstitutional.

The Arizona Court of Appeals denied this claim finding no fundamental error:

> Brown acknowledges that his right to counsel under the Sixth Amendment had not attached when he gave his statements. *See McNeil v. Wisconsin,* 501 U.S. 171, 175, 111 S. Ct. 2204, 115 L.Ed.2d 158 (1991) (Sixth Amendment right to counsel does not attach until initiation of adversary judicial criminal proceedings, "'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment'"), *quoting United States v. Gouveia,* 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146 (1984). He contends, however, that under Rule 6.1(a), Ariz. R. Crim. P., he had a right to consult with counsel "as soon as feasible after [being] taken into custody," (emphasis omitted) and that this right was denied.
>
> ¶ 14 Brown is correct that he had a right to consult with counsel—indeed, Detective Diaz informed him of the right before beginning the August 26 interview and confirmed his understanding before the August 27 interview. But Brown waived that right by failing to invoke it. *See State v. Eastlack,* 180 Ariz. 243, 250–51, 883 P.2d 999, 1006–07 (1994) (suspect must clearly invoke right to counsel). Accordingly, the trial court did not

- 16 -

commit fundamental error by failing to suppress his statements on this ground.

¶ 15 Brown also argues that he was denied his right to a timely initial appearance, which in turn prevented the attachment of his Sixth Amendment right to counsel. Rule 4.1(a), Ariz. R. Crim. P., provides that an arrested person must be brought before a magistrate "without unnecessary delay" and that if this initial appearance does not occur within twenty-four hours after arrest, the person must be released. The comment to the 2007 amendment of Rule 4.1(a) explains that "[t]his provision defines the applicable standard of promptness as without unreasonable delay and in no event more than 24 hours after arrest." The state argues that the twenty-four hour rule was "impracticable" and there was no Rule 4.1 violation because the delay in bringing Brown before a magistrate was due to his hospitalization—thus, not "unnecessary"—and he was given his initial appearance the same day he was released from the hospital.

¶ 16 The parties cite no Arizona authority, nor do we find any, addressing whether a defendant's hospitalization excuses delay in providing him or her with an initial appearance. We find guidance, however, in decisions from other jurisdictions holding that delay arising from a need to provide the accused with medical treatment is excusable under their respective rules requiring an initial appearance without unnecessary delay.

. . . .

¶ 18 We agree with the reasoning of the above decisions and conclude that because the necessity of Brown's medical treatment caused the delay in providing his initial appearance and he was brought before a magistrate within twenty-four hours of his release from the hospital, the delay was neither unnecessary nor unlawful. Accordingly, Brown has demonstrated no fundamental error, on this record, by the introduction at trial of his hospital statements. *See United States v. Redlightning,* 624 F.3d 1090, 1109 (9th Cir. 2010) (where portion of delay due to government's conduct not unreasonable, no violation of prompt presentment requirement and district court did not err in refusing to suppress confession); *United States ex rel. Dove v. Thieret,* 693 F.Supp. 716, 722 (C.D.Ill. 1988) ("it is clear that the Sixth Amendment right to counsel does not accrue prior to the initiation of formal adversarial judicial proceedings simply because police interrogate an individual"); *Green,* 274 N.E.2d at 271 (statements made while in hospital admissible despite lack of counsel because "right to an immediate hearing is necessarily waived for the benefit of the injured accused"); *People v. Solorzano,* 94 A.D.3d 1153, 944 N.Y.S.2d 154, 155 (2012) ("To suppress a statement ... there must be evidence that [presentment] delay was for the purpose of depriving the defendant of the right to counsel and obtaining an involuntary confession, and that this delay was strategically designed so that an accused could be questioned outside the presence of counsel.") (citation omitted); *see also People v. White,* 395 Ill.App.3d 797, 334 Ill.Dec. 943, 917 N.E.2d 1018, 1039–40 (2009) (no attachment of Sixth Amendment right to counsel in absence of formal judicial proceeding even when arraignment delayed by eight days); *cf. In re Walker,* 112 Cal.Rptr. 177, 518 P.2d at 1135–37 (upholding admission of defendant's statements obtained during ten-day hospital stay as voluntary and noting concomitant delay of initial appearance); *People v. Dove,* 147

> Ill.App.3d 659, 101 Ill.Dec. 97, 498 N.E.2d 279, 284 (1986) (Sixth Amendment right to counsel not violated where arraignment delayed by four days as a result of transportation and court holidays).

(Doc. 10, Ex C at 7-12.)

First, Brown alleges his right to counsel was violated by the detective questioning him three times without counsel. The Sixth Amendment right to counsel attaches "at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991) (quoting *United States v. Gouveia*, 467 U.S. 180, 188 (1984)). Because adversarial criminal proceedings had not begun at the time Brown was questioned, Brown's right to counsel had not attached and was not violated. Additionally, Brown was informed of his right to consult counsel at the first interrogation, and he never invoked that right.

Second, Brown alleges his right to due process was violated by the detective questioning him three times prior to an initial appearance. There is no clearly established Supreme Court law holding that it is unconstitutional to admit voluntary statements obtained prior to the initiation of criminal proceedings, even if those proceedings are delayed longer than typical or beyond state time limits.[3] Therefore, the AEDPA dictates that Brown is not entitled to relief on this claim.

## **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, this Court must issue or deny a certificate of appealability (COA) at the time it issues a final order adverse to the applicant. A COA may issue only when the petitioner "has made a

---

[3] Brown cites *Corley v. United States*, 556 U.S. 309 (2009). That case is not based on the constitution but on the federal rule for prompt presentment after arrest, which has no application to state court proceedings. *Id.* at 307. Further, Brown asserts that the police delayed his initial appearance to obtain further statements from him. This argument is not supported by the factual record. The second interview of Brown occurred less than 24 hours after he was arrested, prior to the required time for presentation to a magistrate under the Arizona rules. The police did not initiate any questioning outside that 24-hour window.

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing can be established by demonstrating that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner" or that the issues were "adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right, and (2) whether the court's procedural ruling was correct. *Id.* The Court finds that reasonable jurists would not find this Court's procedural rulings or merits rulings debatable. Therefore, a COA will not issue.

Accordingly,

**IT IS ORDERED** that the Petition for Writ of Habeas Corpus is **DISMISSED**.

**IT IS FURTHER ORDERED** that the Clerk of Court should enter judgment and close this case.

**IT IS FURTHER ORDERED** that, pursuant to Rule 11 of the Rules Governing Section 2254 Cases, in the event Petitioner files an appeal, the Court denies issuance of a certificate of appealability.

Dated this 28th day of December, 2017.

_____
Honorable Lynette C. Kimmins
United States Magistrate Judge